UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KEN CALDWELL and LISA CALDWELL,

                             Plaintiff(s),                  **REPORT AND**
                                                                **RECOMMENDATION**
        -against-                                                  CV 08-4207 (JFB) (WDW)

GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C.,
RUSSELL POLIRER, FAIRFIELD PRESIDENTIAL
ASSOCIATES, LIGHTSTONE GROUP, FAIRFIELD
PRESIDENTIAL MANAGEMENT CORP.,
DAVID LICHTENSTEIN, and DEBBIE KETAY,

                             Defendant(s).
----------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

       Before the court on referral from District Judge Bianco is the defendants' motion to dismiss the complaint pursuant to Rule 12(c). DE[20]. The motion is opposed by the pro se plaintiffs. DE[33]. For the reasons set forth herein, I recommend that the motion be granted and the Complaint dismissed without leave to replead. Further, I recommend, *sua sponte*, that the pending motion to amend (DE[18]) be denied. The changes articulated in the motion would not change the recommendation that the complaint be dismissed.

### BACKGROUND

       This action was commenced by the pro se plaintiffs, Ken and Lisa Caldwell, in October 2008. The complaint purports to set forth claims pursuant to the federal Fair Debt Collection Act, the Fair Credit Reporting Act, New York General Business Law §349, Federal Rule of Civil Procedure 11, federal criminal statutes regarding fraud and mail fraud, and the New York Debt Collection Practices Act and as well as claims for Malicious Prosecution and Malicious Abuse of Process under Pennsylvania and New York law. *See* Complaint, DE[1], ¶¶ II & III. The

complaint also suggests various violations of the rules of professional and judicial conduct.

The Complaint is dense and quite difficult to follow at times, including not only factual allegations but references to and quotations from various statutes, codes of conduct and caselaw, but it is clear that the gravamen of the claims arises from proceedings related to an action in the Civil Court of the City of New York and an appeal by the Caldwells of the judgment entered by the Civil Court. The plaintiffs were tenants in a residential building that the defendants claim was owned by defendant Fairfield Presidential Associates ("FPA"), while the plaintiffs claim that it was owned by defendant Fairfield Presidential Management Corp. (*see* Pl's Opp. at p. 2). On April 2, 2003, defendant Gutman, Mintz, et al., a law firm representing FPA, sent a collection letter to the plaintiffs regarding non-payment of rent. On January 3, 2006, Gutman sent another collection letter. On February 27, 2006, Gutman filed a lawsuit in New York City Civil Court on behalf of FPA against the Caldwells for breach of lease and damages.

A Civil Court trial was held, and a Decision was issued on June 4, 2007, stating that the plaintiff, FPA, had "established a prima facie case based on credible evidence," while the defendants, the Caldwells, "[did not] establish a prima facie case" on their counterclaim. The Decision also stated:

> These matters originated in housing court Index # 006635/01; 081666/01; and 063139/02 where issue of non-payment and abatement & holdover were adjudicated. All matters were appealed and denied. A judgment of possession was granted in the holdover action. It was established and unpaid. [Plaintiff] seeks money judgment in this matter and established his claim. [Defendants] counterclaimed seeking abatement but had his day in housing court and cannot sustain this claim in Civil Court.

Novikoff Aff., Ex. B.

Judgment in the amount of $17,831.45 was entered on September 14, 2007. The

Caldwells appealed the Civil Court ruling to the Appellate Term, which affirmed the order without costs on February 11, 2009. The order from the Appellate Term noted that the judgment entered by the Civil Court "awarded plaintiff the principal sum of $11,462.93 as against defendant Ken Caldwell, and implicitly dismissed his counterclaims." Novikoff Aff., Ex. C. It also explained the background of the dispute, noting that the plaintiff, FPA, had commenced the action "to recover use and occupancy for the months of January 2002 through November 2002." Ken Caldwell counterclaimed for a "rent abatement." At trial, FPA proved, through two stipulations so-ordered by the court in prior proceedings, that Ken Caldwell had agreed to pay use and occupancy of $1,138 per month for the months sought and agreed to waive and release all claims against FPA. On appeal to the Appellate Term, the Caldwells disputed the amount awarded to the plaintiff, but that amount was plainly set out in the Stipulations. *Id.* The plaintiffs state that, on April 9, 2009, the Appellate Term denied their application to appeal to the Appellate Division. *See* Pl's Opp. DE[33].

In between the entry of judgment in the Civil Court and the denial of the Caldwells' appeal, they started this lawsuit. All of the defendants are related to the events underlying the state court proceedings, either directly, as parties or lawyers, or indirectly, as employees of the corporate defendants.

## DISCUSSION

**Standard For Motion To Dismiss**:

The court notes, as a threshold issue, that this motion was made after Answers had been filed, and is thus a motion for judgment on the pleadings pursuant to Rule 12(c). Rule 12(c) motions are governed by the same legal standards as those applicable to Rule 12(b)(6), and

references to Rule 12(b)(6) are thus intended to apply to the instant motion. *See In re Ades & Berg Investors,* 550 F.3d 240, 243 n.4 (2d Cir. 2008).

Standards applicable to 12(b)(6) motions changed in 2007. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. *Twombly* discarded the "no set of facts" language in favor of the requirement that the plaintiff must plead enough facts "to state a claim for relief that is plausible on its face." 127 S. Ct. at 1974. Post-*Twombly,* the court must still assume that well-pleaded factual allegations set forth in a complaint are true and draw all inferences in favor of the non-moving party (s*ee, e.g., Holmes v. Poskaner,* 2009 WL 2171326 (2d Cir. Jul. 21, 2009)), but those factual allegations must be enough to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Williams v. Berkshire Fin. Grp. Inc.*, 491 F. Supp. 2d 320, 324 (E.D.N.Y. 2007)(quoting *Twombly*, 127 S. Ct. at 1969); *see also ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

And there remains a significant difference between factual allegations and legal conclusions. In *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), the Supreme Court explained that "[t]wo working principles underlie [the] decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss

4

the court must accept as true the factual allegations in the complaint, it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50. As the *Ashcroft* court noted, Federal Rule 8 may be a generous departure from stricter pleading rules of the past, but "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950.

The second principle underlying *Twombly*, *Ashcroft* explains, is that only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.* at 1950. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (internal quotation marks and citations omitted). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 1950 (internal quotation and punctuation marks omitted). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the well-pleaded facts do not permit the court to infer "more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (internal citations and punctuation omitted).

With these standards in mind, I turn to the issues raised in the motion.

**Application of Rooker-Feldman:**

The defendants argue that the complaint must be dismissed pursuant to the Rooker-Feldman doctrine. "When a federal suit follows a state suit, the former may be prohibited by the so-called *Rooker-Feldman* doctrine." *Hoblock v. The Albany County Bd. of Elections,* 422 F.3d

77, 83 (2d Cir. 2005). In *Hoblock,* the Second Circuit examined the Supreme Court's then-recent consideration of the Rooker-Feldman doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 125 S. Ct. 1517 (2005), noting that the two cases from which the doctrine derived "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments, but . . . provided little guidance on how to apply that principle." *Hoblock,* 422 F.3d at 84. Before *Exxon Mobil*, the Second Circuit applied Rooker-Feldman expansively, but in *Exxon Mobil,* "the Supreme Court pared back the *Rooker-Feldman* doctrine to its core, holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 85 (citing *Exxon Mobil*, 125 S. Ct. at 1521-22). From that holding, the Second Circuit extrapolated four requirements for the application of Rooker-Feldman: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court judgment; (3) the plaintiff must invite district court review and rejection of the state court judgment; and (4) the state court judgment must have been rendered before the federal court proceedings. *Id.* The first and fourth requirements, *Hoblock* notes, can be loosely termed procedural and the second and third termed substantive. *Id.*

Here, all of the requirements are met. The plaintiffs lost in state court, complain of numerous injuries caused by the state court judgment, and invite review and rejection of that judgment, which was rendered before this proceeding was started. Even under the generous reading afforded to pro se litigants, a fair review of the Complaint and the plaintiffs' papers in

6

opposition to this motion makes clear that they want everyone associated with the state court proceeding to be found liable, and they seek rejection of that judgment. Many of their allegations and much of the argument in their opposition focus on the defendants' attorneys' failures to produce certain documents in the state court proceeding, notably a Certificate of Occupancy, and the plaintiffs' claim that FPA, the plaintiff in those proceedings, is not the true owner of the building. Those issues pertain solely to the state court proceeding, were explicitly or implicitly addressed in that proceeding, and are barred from review in this court. Thus, to the extent the plaintiffs seek review and rejection of the state court judgment, the Complaint must be dismissed.

However, an argument can be made that they are also raising "independent claims" under the federal Fair Debt Collection Act, the Fair Credit Reporting Act, and New York common and statutory law. The possibility of such independent claims has been recognized in *Exxon Mobil* and in *McKithen v. Brown*, 481 F.3d 89 (2d Cir. 2007). The Second Circuit has considered how a court should determine whether a federal suit raises an independent, non-barred claim. *See Hoblock,* 422 F.3d at 86-87. "At first glance, one might think that a federal claim is independent of claims raised in state court if the federal claim is premised on a theory not passed upon by the state court. . . . Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed." *Id.* at 86. In this regard, courts have held that some claims not raised in state court are so "inextricably intertwined" with the claims that were raised in state court that Rooker-Feldman would apply. *Id.* (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)

7

& *Moccio v. New York State Office of Court Administration,* 95 F.3d 195 (2d Cir. 1996)). "In light of *Exxon-Mobil* . . . [however], it appears that describing a federal claim as 'inextricably intertwined' with a state-court judgment only states a conclusion." That is, the phrase "inextricably intertwined" lacks independent content, but is "simply a descriptive label attached to claims that meet the requirements outlined in *Exxon-Mobil.*" *Hoblock,* 422 F.3d at 86-87.

Although there is ample basis for finding that all of the plaintiffs' claims here are inextricably entwined with the state court judgment and all that led up to it, and thus non-viable under Rooker-Feldman, I will, to give the pro se plaintiffs the full consideration to which they are entitled, also consider all of the claims as if they were independent.

**Fair Debt Collection Practice Act Claim**

The plaintiffs assert claims pursuant to various subsections of 15 U.S.C. §1692, the Fair Debt Collection Protection Act, which, *inter alia,* prohibits debt collectors from engaging in "conduct the consequence of which is to harass, oppress, or abuse any person in connection with the collection or the consequence of which is to abuse the hearer or reader." 15 U.S.C. §1692d(1)-(6). It also prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," specifically, any "false representation of the character, amount, or legal status of any debt." *See* 15 U.S.C. §1692e. To the extent that factual allegations in support of this claim can be segregated from the overall complaint, it would appear that the plaintiffs are arguing that defendant Gutman, Mintz, Baker & Sonnenfeldt "referred the debt" to attorneys Mann Bracken LLC in Virginia and the Mann Bracken firm brought suit against the Caldwells on May 8, 2003 for breach of a lease in that state, and again on January 6, 2005. These lawsuits preceded the action in New York's Civil

Court. The Complaint also references the two collection letters to the Caldwells, one in April 2003 and the other in January 2006, and it is possible that the plaintiffs intended these as the bases for their claim. Or perhaps the plaintiffs are claiming that the proceedings in the Civil Court violate the FDCPA.

But I can only guess. It is impossible to determine from the pleadings or from the argument in opposition precisely what documents or acts make out a claim pursuant to the Fair Debt Collection Act, or how any of the defendants are "debt-collectors" under that law. Even assuming that they do make out such a claim, however, such claim is time barred. Section 1692k(d) of the FDCPA provides that an action to enforce any liability created by the FDCPA "must be brought within one year from the date the violation occurs." *See also Ohlson v. The Cadle Co., Inc.,* 2008 U.S. Dist. LEXIS 77328, *22 (E.D.N.Y. Sept. 30, 2008). This action was commenced in October 2007, outside the limitations period, and FDCA.

The plaintiffs also refer to a claim pursuant to "New York DCA Law:5-77 DEBT COLLECTION PRACTICES ACT." Presumably, they are referring to the New York City Department of Consumer Affairs. The state court proceeding is not the sort of debt collection activity contemplated by either the federal law or state or local debt collection guidelines, and, to the extent that the Complaint purports to make out a claim under DCA requirements, that claim should be dismissed.

**Federal Credit Reporting Act Claim:**

As the defendants note, the Fair Credit Reporting Act sets forth obligations applicable to "consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." 15 U.S.C.§1681-2; *and see Smith v. RBC Mortgage,* 2006 U.S.

9

Dist. LEXIS 10282, *13 (S.D.N.Y. Mar. 6, 2006) (internal citations omitted). Paragraph 21 of the Complaint alleges that, in 2001 or 2002, defendant Debbie Ketay reported information about the plaintiffs' non-payment of rent to First American Registry/SafeRent, described as a "screening company for landlords that blacklists tenants that execute their right under the law." Paragraph 22 alleges that, on February 1, 2002, Ketay also reported the Caldwells to TransUnion and Equifax credit bureaus. Presumably the reports were of non-payment of rent. These claims must be dismissed. First, courts have held that there is no private, civil cause of action under the FCRA. *See Smith,* 2006 U.S. Dist. LEXIS 10282 at *13. Further, even if such an action were allowed, the two year statute of limitations for FCRA claims has long run. Thus, I recommend that these claims be dismissed.

**Malicious Prosecution Claim:**

To state a claim for malicious prosecution under New York law, a plaintiff must allege: "'(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends. . . in favor of the plaintiff.'" *Estiverne v. Esernis-Jenssen,* 581 F. Supp. 2d 335, 348 (E.D.N.Y. 2008)(quoting *O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir. 1996). The state court action did not end in the Caldwells' favor, and I recommend that this claim be dismissed.

**Malicious Abuse of Process Claim:**

The elements of malicious abuse of process are derived from state law, and here, New York law would apply. For reasons unknown to the undersigned, the Caldwells reference Pennsylvania law in regard to malicious abuse of process, citing a case from Pennsylvania Superior Court. *See* Complaint, ¶¶ II & 14. Pennsylvania law is not relevant to any claim the

Caldwells might have regarding malicious abuse of process. They also cite, late in the Complaint, to the elements of malicious abuse of process under New York law, and I will consider the claim under that law. (Complaint, ¶36(4)).

Under New York law abuse of process has three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984). Here, the process is presumably the civil action in state court, but nothing in the complaint can be read to plausibly allege either a bad intention or an improper collateral objective[1]. The defendants initiated the civil action to get an award of back rent. The New York court found that they were entitled to it, and justification is thus established. Courts have focused on the collateral objective element, noting that "in order to establish the collateral objective element, 'a plaintiff must prove not that the defendant acted with an improper motive, but rather an improper purpose." *Blair v. City of New York*, 2009 U.S. Dist. LEXIS 29300, *25 -26 (E.D.N.Y. Mar. 31, 2009). As noted, the defendants purpose was to get their back rent and they did so. Nothing in the Complaint gives rise to even the barest inference of some other purpose,

---

[1]Aside from the recitation of law in the Complaint, the only other specific reference to this cause of action is as follows: "the General Statutes section §[52-568] **Malicious Prosecution of Civil Suit** by obtaining a judgment from the NYC Civil Court without submitting the certificate of occupancy from the NYC Dept. of Building or the MDR from the NYC Dept. of HPD knowing that this is required by law, which the statute of law states without presenting this document to the court the owner is barred from collecting rent as well as never validating the debt, showing proof of deed of the actual owner of the condo apartment my wife and I were renting fomr or a binding lease for 2001-2002, **Malicious Abuse of Process & Wrongful use of Civil Proceeding and Wrongful Eviction** which these exhibits will show as my wife and I complaint go into full detail." Complaint, ¶ III (emphasis in original).

and the claim should be dismissed.

**N.Y. General Business Law §349 Claim:**

New York's General Business Law §349 makes illegal "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York. To state a claim under the section, a plaintiff must plead: "(1) a consumer oriented transaction; (2) deceptive acts by the defendant; and (3) injury caused by such deceptive acts." *Sorrentino v. ASN Roosevelt Center, LLC,* 579 F. Supp. 2d 387, 391 (E.D.N.Y. 2008)(citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20 (1995)). Although courts have applied section 349 in the landlord/tenant context (*see Sorrentino*, 579 F. Supp. 2d at 391), the Complaint here does not set forth "deceptive"acts by the defendants that would allow the court to find that a plausible claim has been alleged. The Caldwells' repeated allegation that some or all of the defendants failed to submit a Certificate of Occupancy, even assuming it is true, is surely not the sort of deceptive consumer-oriented act that the statute contemplates. And, the overall successful prosecution of the civil suit cannot be deemed a deceptive act in violation of the General Business Law. This claim should be dismissed.

**Remaining Claims:**

The Complaint also makes reference to Rule 11 and various federal criminal statutes. There is absolutely no basis for claims based on those statutes - Rule 11 does not apply to activities in a prior state court proceeding, and there is no private right of action under federal criminal law. Thus, to the extent that the Complaint attempts to make claims under those statutes, such claims must be dismissed.

The plaintiffs have failed to set forth any plausible claims in their Complaint, and it

should be dismissed in its entirety without leave to replead. Consideration of all of the claims in the Complaint demonstrates that what the Caldwells really want is an appeal of the state court proceeding. Further, I recommend that the pending motion to amend the complaint be denied. The motion to amend seeks only to add details about jurisdiction and does not suggest that any viable claims would be added.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the defendants by electronic filing on the date below. **Defendants' counsel is directed to serve a copy of this Report on the plaintiffs by certified mail, return receipt requested, and to electronically file proof of service with the court.** Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. See 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. See Ferrer v. Woliver, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); Beverly v. Walker, 118 F.3d 900, 902 (2d Cir. 1997); Savoie v. Merchants Bank, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
January 27, 2010

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge