UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 08-CV-4207 (JFB) (WDW)
_____

KEN CALDWELL AND LISA CALDWELL,

Plaintiffs,

VERSUS

GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C, ET AL.,

Defendants.

_____

MEMORANDUM AND ORDER
March 30, 2010
_____

JOSEPH F. BIANCO, District Judge:

Before the Court are plaintiffs Ken and Lisa Caldwell's ("plaintiffs" or "the Caldwells") objections to a Report and Recommendation ("R&R") issued by Magistrate Judge Wall. The R&R recommends the Court grant defendants' motion for judgment on the pleadings and deny plaintiffs' motion to amend their complaint. For the reasons set forth below the Court adopts the well-reasoned and thorough R&R, except its recommendation regarding plaintiffs' Fair Credit Reporting Act Claim. Although the Court agrees that the FCRA claim should be dismissed, the Court will give plaintiffs the opportunity to replead the claim.

I. BACKGROUND

Plaintiffs Ken and Lisa Caldwell, who are proceeding *pro se*, filed the complaint in this case on October 7, 2008 against defendants Gutman, Mintz, Baker, & Sonnenfeldt P.C. ("Gutman"); Russell Polirer; Fairfield Presidential Associates ("FPA"); Lightstone Group; Fairfield Presidential Management Corporation ("FPMC"); David Lichtenstein; and Debbie Ketay. Plaintiffs allege numerous federal and state claims, including: (1) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*; (2) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*; (3) violations of New York General Business Law § 349; (4) malicious prosecution; (5) abuse of process; (6) wrongful use of a civil proceeding; (7) violations of Federal Rule of Civil Procedure

11; (8) violations of the federal criminal false statements statute, 18 U.S.C. § 1001; and (9) federal criminal mail fraud, apparently under an "honest services" theory, pursuant to 18 U.S.C. § 1341 and § 1346.

Gutman and Polirer answered the complaint on November 26, 2008. FPA, Lightstone Group, FPMC, Lichtenstein, and Ketay answered on December 10, 2008. On May 5, 2009, all defendants notified the Court that they intended to move for judgment on the pleadings, and the Court issued a briefing schedule that same day. On May 29, 2009, plaintiffs filed a letter motion seeking leave to file an amended complaint. On June 2, 2009, in accordance with the briefing schedule previously issued by the Court, defendants filed their motion for judgment on the pleadings. On November 6, 2009, this Court referred defendants' motion to Magistrate Judge Wall for an R&R. On January 27, 2010, Magistrate Judge Wall recommended that defendants be granted judgment on the pleadings and also recommended, *sua sponte*, that plaintiffs' motion to amend their complaint be denied. Defendants served plaintiffs with the R&R by mail on February 3, 2010. On February 18, 2010, this Court received objections to the R&R from plaintiffs.

II. STANDARD OF REVIEW

A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. See *DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994); *Walker v. Hood*, 679 F. Supp. 372, 374 (S.D.N.Y. 1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. See Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997). As to portions of a report to which specific written objections are made, the Court reviews such findings *de novo*. See Fed. R. Civ. P. 72(b); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

III. DISCUSSION

A. Motion for Judgment on the Pleadings

The R&R recommended granting defendants judgment on the pleadings because (1) plaintiffs sought review of a prior state court judgment, and the *Rooker-Feldman* doctrine therefore precluded them from bringing this action, and (2) to the extent plaintiffs asserted claims independent of the prior state court judgment, those claims failed to state a claim for which relief could be granted.

1. *Rooker-Feldman*

The Court agrees with the R&R that *Rooker-Feldman* at least partially precludes plaintiffs from bringing this action. Specifically, the R&R stated that plaintiffs sought to attack a judgment from the Civil Court of the City of New York, Kings County ("the civil court judgment") that issued following a bench trial. (*See* Novikoff Aff. Ex. B.) In that case, FPA—a defendant in this case—sued the Caldwells seeking unpaid rent from several years before. The Caldwells counterclaimed, seeking rent abatement. The civil court found that plaintiffs were liable for back rent and that they were not entitled to

any abatement. (*See id.*) Judgment was entered on September 14, 2007. (*See id.* Ex. C.) The Caldwells appealed, and the Appellate Term affirmed the civil court judgment, relying in part on a stipulation plaintiff signed in 2002 to resolve two earlier proceedings. *See Fairfield Presidential Assoc. v. Caldwell*, No. 2008-134 K.C., 2009 WL 383231 (N.Y. App. Term Feb. 11, 2009).

The Second Circuit has delineated four requirements for the application of the *Rooker-Feldman* doctrine: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal citations and quotations omitted). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." *See id.*

i. Procedural Requirements

The procedural requirements are met here. First, plaintiff lost in state court as evidenced by the civil court judgment.

Second, the civil court judgment was rendered before the district court proceedings were commenced on October 10, 2008. This issue merits some discussion, however. In objecting to the R&R, plaintiffs contend that the R&R incorrectly "stated that we had started this lawsuit in Federal court [sic] after we were denied our appeal. . . . " (*See* Obj. to R&R, at 2.) The R&R actually states that "[i]n between the entry of judgment in the [Kings County] Civil Court and the denial of [plaintiffs' state-court] appeal, they started this lawsuit." (*See* R&R, at 3.) In any event, the Court will construe the *pro se* objections to advance the strongest argument possible. Here, that argument would be that the state-court judgment was not "rendered before the district court proceedings commenced" because state appellate proceedings were still pending when plaintiffs filed this lawsuit in federal court. (*See generally id.* at 2-3.)

Although neither the Supreme Court nor the Second Circuit has directly addressed the issue, some courts have found the *Rooker-Feldman* doctrine inapplicable unless all state proceedings—including appeals—have ended before the federal action commences. *See Nicholson v. Shafe*, 558 F.3d 1266, 1275-76 (11th Cir. 2009) ("[B]ecause an appeal remained pending in the state court action at the time the Appellants filed the instant [federal] case, the state court proceedings had not ended for purposes of *Rooker-Feldman* . . . ."); *Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006) ("In this case, [plaintiff] filed his federal suit while his petition for certiorari to the New Mexico Supreme Court was pending. His state suit was not final. As such, the *Rooker-Feldman* doctrine does not bar his federal suit . . . ."); *Dornheim v. Sholes*, 430 F.3d 919, 923-24 (8th Cir. 2005) ("At the time that the [plaintiffs] commenced this federal action, the state court adjudication was not complete" because state appellate proceedings took place after filing of federal action); *Federación de Maestros de P.R. v. Junta De Relaciones Del Trabajo de P.R.*, 410 F.3d 17, 27 & n.13 (1st Cir. 2005); *see also Council v. Better Homes Depot, Inc.*, 04 CV 5620 (NGG) (KAM), 2006 U.S. Dist. LEXIS 57851, at *25 (E.D.N.Y.

3

Aug. 16, 2006) ("Therefore, the state court proceeding ends for *Rooker-Feldman* purposes after a plaintiff allows the time for appeal to lapse without filing an appeal in state court."); *Phillips ex rel. Green v. City of N.Y.*, 453 F. Supp. 2d 690, 714 (S.D.N.Y. 2006).

Generally speaking, these decisions have focused on language in the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), stating that *Rooker-Feldman* applies only when "'the losing party in state court filed suit in federal court *after the state proceedings ended* . . . .'" *See, e.g.*, *Federación*, 410 F.3d at 24 (quoting *Exxon Mobil*, 544 U.S. at 291 (emphasis added); *see also Nicholson*, 558 F.3d at 1275-76. Under the reasoning of these cases, "state proceedings" have not "ended" if appeals are still pending, and, therefore, if, as here, a plaintiff files a federal suit while state court appeals are still pending, the *Rooker-Feldman* doctrine does not bar the federal suit.

Other courts, however, have disagreed. These courts have applied *Rooker-Feldman* as long as the federal action seeks review of a previous state court judgment, regardless of whether that judgment is being appealed in the state courts when the federal case begins. *See, e.g.*, *Schuh v. Druckman & Sinel, L.L.P.*, No. 07 Civ. 366 (LAK) (GWG), 2008 U.S. Dist. LEXIS 15079, at *16 (S.D.N.Y. Feb. 29, 2008) ("That the [plaintiffs] are still in the process of appealing the state court decision is irrelevant to the *Rooker-Feldman* analysis."); *Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548 (KMK), 2007 WL 2176059, at *6 n.11 (S.D.N.Y. July 26, 2007) ("The Court notes that this judgment was appealed, but that the judgment was final for *Rooker-Feldman* purposes."); *Melnitzky v. HSBC Bank USA*, 06 Civ. 13526 (JGK), 2007 U.S. Dist. LEXIS 28955, at *26 (S.D.N.Y. Apr. 17, 2007) ("[T]he fact that a federal plaintiff may still have time to appeal the challenged state court order or judgment within the state system does not affect the *Rooker-Feldman* analysis."); *Bush v. Danziger*, No. 06 Civ. 5529(PKC), 2006 WL 3019572, at *6 (S.D.N.Y. Oct. 23, 2006); *Galtieri v. Kelly*, 441 F. Supp. 2d 447, 458 n.9 (E.D.N.Y. 2006); *see also Field Auto City, Inc. v. GMC*, 476 F. Supp. 2d 545, 553 (E.D. Va. 2007) ("Simply put, there is no sound reason to preclude the operation of *Rooker-Feldman* where a state trial court has rendered judgment, but state appeals are not yet complete when the federal action is filed.").

The Court finds this latter approach more persuasive. Despite *Exxon-Mobil*'s use of the phrase "after the state proceedings ended," that decision makes clear that *Rooker-Feldman* prevents federal courts (other than the Supreme Court) from "review[ing] and revers[ing] unfavorable state-court *judgments*." 544 U.S. at 283 (emphasis added); *id.* at 284 ("The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court *judgments* rendered before the district court proceedings commenced and inviting district court review and rejection of those *judgments*.") (emphasis added); *see also Mac Pherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 137 (E.D.N.Y. 2006) ("*Rooker-Feldman* establishes the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."). This purpose would be undermined if the doctrine is inapplicable simply because a litigant happens to be

4

seeking state appellate review of a state-court judgment, while also seeking federal district court review of that judgment. Regardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment. *See Field Auto City*, 476 F. Supp. 2d at 553 (explaining that "[a] contrary rule would allow a state court litigant to avoid *Rooker-Feldman* simply by filing the federal action while the state appeal is underway"). This is what *Rooker-Feldman* prohibits. *See generally Exxon Mobil Corp.*, 544 U.S. at 283 (explaining that *Rooker-Feldman* prevents "federal courts of first instance [from] review[ing] and revers[ing] unfavorable state-court judgments"). Therefore, to the extent plaintiffs challenge the judgment of the Civil Court, Kings County, their claims relate to a state-court judgment "rendered before the district court proceedings commenced." Accordingly, the procedural requirements of *Rooker-Feldman* are met.

ii. Substantive Requirements

The substantive requirements are met as well, at least with respect to some of plaintiffs' claims. The substantive requirements of *Rooker-Feldman* are that "the plaintiff must complain of injuries caused by a state court judgment" and "the plaintiff must invite district court review and rejection of that judgment." *Holblock*, 422 F.3d at 85. A plaintiff's injuries are not "caused by a state court judgment" when the state court "simply ratified, acquiesced in, or left unpunished" the actions of a third party. *Id.* at 88. Additionally, "a party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007). Events occurring after the state court judgment may also break the causal chain. In *Morrison v. City of New York*, 591 F.3d 109 (2d Cir. 2010), the Second Circuit construed a Queens Family Court order as directing hospital personnel to evaluate plaintiff and hold her for two weeks if the hospital found she was a danger to herself or to others. 591 F.3d at 113. The hospital found that plaintiff was dangerous and detained her. *Id.* The Second Circuit panel held that *Rooker-Feldman* did not bar plaintiff's § 1983 suit challenging her detention because the cause of her detention—and the issue plaintiff sought review of—was the hospital's finding that she was dangerous, not the court order directing the hospital to evaluate plaintiff. *Id.* at 115.

Here, read as a whole, the complaint appears to allege that defendants have engaged in a pattern of vexatious litigation and harassment of plaintiffs since approximately 2001 and that, because of this pattern of litigation and harassment, plaintiffs have suffered emotional and financial injury. (*See* Compl. ¶¶ 37-38.) The 2007 civil court judgment was clearly one of the main events in this pattern, and the complaint can be construed as alleging injuries that occurred as a result of the judgment. For example, the complaint claims that defendants won judgment without stating a prima facie case and without naming a necessary party. (*See, e.g., id.* ¶¶ 6-9, 15, 16, 28.) Additionally, the complaint alleges that plaintiffs have suffered financial and emotional distress as a result of defendants' conduct. Construed this way, the civil court judgment was a cause of plaintiffs' injuries, and this Court would necessarily have to review the state-court judgment to decide

5

plaintiffs' claims. *Cf. Stanley v. Hollingsworth*, 307 F. App'x 6, 9 (7th Cir. 2009) (finding *Rooker-Feldman* doctrine barred malicious prosecution claim in which plaintiff "ask[ed] the federal district court to rule that the state court erred in its foreclosure judgment because of the misconduct of his litigation adversaries"); *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137, 155 (D.D.C. 2008) (holding that *Rooker-Feldman* barred malicious prosecution claims related to previous cases that did not end in plaintiff's favor because, to succeed on claims, plaintiff would need to attack the validity of the prior judgments). Therefore, *Rooker-Feldman* bars the claims relating to these allegations.

2. Additional Grounds for Granting Defendants Judgment on the Pleadings

However, even if *Rooker-Feldman* did not bar any of plaintiffs' claims, the Court would still conclude that defendants are entitled to judgment on the pleadings because plaintiffs' claims are barred by ordinary preclusion principles, barred by the applicable statutes of limitations, and/or are insufficient to state a claim for which relief can be granted.

i. Ordinary Preclusion Principles

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata*); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *see also Wilson v. Ltd. Brands*, No. 08 CV 3431(LAP), 2009 WL 1069165, at *4 (S.D.N.Y. Apr. 17, 2009) (granting judgment on the pleadings based on collateral estoppel); *Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607 (DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts."); *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 372-73 (S.D.N.Y. 1999) ("A defense of res judicata may be tested by a motion pursuant to Rule 12(c)."); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("[T]he defense of res judicata or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment").

a. Collateral Estoppel

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65

6

(2d Cir. 2007) (citations omitted); *accord Hoblock*, 422 F.3d at 94. "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985)). Collateral estoppel generally does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Amadsau v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. 2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action."). Additionally, a district court may raise the issue of collateral estoppel *sua sponte*. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998).

In this case, collateral estoppel bars plaintiffs' malicious prosecution, abuse of process, New York General Business Law, FCRA and FDCPA claims to the extent that those (or any other) claims are based on FPA's failure to state a prima facie case, its failure to introduce a certificate of occupancy and multiple dwelling registration,[1] and the fact that FPA–not FPMC, brought the previous action.[2]

First, these issues were necessarily decided in the civil court proceedings. Generally, a landlord must show a valid certificate of occupancy and multiple dwelling registration to recover for use and occupancy. *See Sheila Props., Inc. v. A Real Good Plumber, Inc.*, 874 N.Y.S.2d 145, 147 (App. Div. 2009) ("An owner of a de facto multiple dwelling who fails to obtain a proper certificate of occupancy or comply with the registration requirements of the Multiple Dwelling Law cannot recover rent or use and occupancy. Consequently, the plaintiff is precluded from recovering use and occupancy.") (internal citations omitted); *Meaders v. Jones*, No. 2002-529 RI C, 2003 WL 21699947, at *1 (App. Term. June 24, 2003) (collecting cases); *see also* 74 N.Y. Jur. 2d Landlord and Tenant § 351 ("Under the Multiple Dwelling Law, no rent may be recovered by the owner of the premises for which a certificate of occupancy has not been acquired and no action or special proceedings may be maintained therefor, or for possession of the premises for non-payment of rent."). In any event, the civil court, by granting judgment on FPA's use and occupancy claim, necessarily decided that FPA was entitled to recover for use and occupancy, regardless of what evidence was introduced or FPA's status as owner of the premises. To decide plaintiffs' claims related to these issues, the Court would need to re-visit issues that have already been decided in state court.

Additionally, plaintiffs had a full and fair opportunity to litigate these issues in state court. They appeared for trial and prosecuted an appeal of the trial court's decision. This is evident from the papers plaintiffs filed in support of their appeal to the Appellate Term, which are attached to their complaint in this action. (*See* Compl. Ex. I; "Questions Presented.") The papers claim that FPA failed

---

[1] (*See* Compl. "Statement of Claim"; *id.* ¶¶ 6-9, 11.)

[2] (*See* Compl. ¶¶ 15.)

to show proof of ownership and a certificate of occupancy in the civil court proceedings. Thus, the requirements for collateral estoppel are met with respect to plaintiffs' malicious prosecution, abuse of process, N.Y. General Business Law, FCRA, and FDCPA claims to the extent that those claims are based on FPA's failure to state a prima facie case or introduce a certificate of occupancy and multiple dwelling registration or the fact that FPA, and not FPMC, was a defendant in the previous action.[3]

b. *Res Judicata*

Furthermore, the state court proceedings also have res judicata effect and preclude many of plaintiffs' claims in this case. The preclusive effect of *res judicata* is broader than that of collateral estoppel. Under the doctrine of *res judicata*, otherwise known as claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action,'" not just those that were actually litigated. *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (internal quotation marks and emphasis omitted) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgement would have had in state court." *Burka v. N.Y. City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). New York courts apply a transactional analysis of *res judicata*, "'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" *Id.* (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The doctrine applies only if "(1) there is a previous adjudication on the merits; (2) the previous action involved [the party against whom *res judicata* is invoked] or its privy; and (3) the claims involved were or could have been raised in the previous action." *Whelton v. Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 155 (2d Cir. 2005) (citing *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000)); *see also People ex. rel. Spitzer v. Applied Card Sys.*, 894 N.E.2d 1, 12 (N.Y. 2008). *Res judicata* applies to defenses that could have been raised in the prior action as well. *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) ("'Thus, res judicata prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.'" (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992))); *Newton Garment Carriers, Inc. v. Consol. Carriers Corp.*, 673 N.Y.S.2d 631, 632 (App. Div. 1998) ("[T]he doctrine of res judicata, or claim preclusion, forecloses a

---

[3] An additional requirement of collateral estoppel under New York law is that the issue be "decisive of the present action." The Second Circuit has defined this as meaning that the issue "would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003). Here, it is apparent from plaintiffs' complaint that plaintiffs' malicious prosecution and abuse of process claims rely on FPA's alleged failure to state a prima facie case, its failure to introduce the MDR and the COO, and its presence (as opposed to FPMC's) presence in the prior suit. Therefore, this element is met here as well.

party from relitigating a cause of action that was the subject matter of a former lawsuit, or from raising issues or defenses that might have been litigated in the first suit."); *Robbins v. Growney*, 645 N.Y.S.2d 791, 792 (App. Div. 1996) ("'The doctrine of res judicata is applicable . . . to defenses raised in the prior action or which, though not raised, could have been.'" (quoting *119 Rosset Corp. v. Blimpy of N.Y. Corp.*, 409 N.Y.S.2d 735, 736 (App. Div. 1978))) (internal citations omitted).

Here, the requirements for *res judicata* are met. First, the earlier state court action, which included a verdict following a bench trial and a decision from the Appellate Term on an appeal of that verdict, was a "previous adjudication on the merits." *Cf. Alaimo v. Gen. Motors Corp.*, No. 07-CV-7624 (KMK)(MDF), 2008 WL 4695026, at *5 (S.D.N.Y. Oct. 20, 2008) ("Here, there is no doubt that the state court trial and subsequent denial of Plaintiffs' appeal was an adjudication on the merits."). Second, the requirement that the "the previous action involved [the party against whom *res judicata* is invoked] or its privy" is also met. The Caldwells were defendants in the prior action[4] and are plaintiffs here.[5]

Finally, the claims involved were or could have been raised as claims or defenses in the previous action. As noted above, central to the plaintiffs' FDCPA, FCRA, New York General Business Law, malicious prosecution, abuse of process, and wrongful use of a civil proceeding claims is the allegation that defendants improperly obtained the civil court judgment. However, many of the factual allegations plaintiffs raised in support of their claims here involve issues that could have been raised as claims or defenses in the state court proceedings. Again, the papers filed by plaintiff in their appeal prove instructive. First, to the extent plaintiffs challenge the amount of the civil court judgment (see Compl. ¶ 19), they could have challenged (and, in fact, did challenge) that amount in their brief to the Appellate Term. (See Compl. Ex. I "Statement of Fact" (hereinafter, "Appellate Term Brief") ¶ 3.) Second, to the extent plaintiffs assert any claim based on a city marshal's alleged forgery of an eviction inventory sheet, (*see* Compl. ¶¶ 17-18), they also raised this issue on appeal. (*See* Appellate Term Brief ¶ 17.) Third, to the extent plaintiffs assert any claim or defense

---

[4] (*See* Novikoff Aff. Exs. B-D.)

[5] Some decisions formulate this element as requiring that the current action be "between the same parties" as the prior action. *See, e.g., Josey v. Goord*, 880 N.E.2d 18, 20 (N.Y. 2007). That standard is met here as well. FPA was the plaintiff in the prior action and is the defendant here. Additionally, given that the complaint can be construed to allege that FPMC, Lightstone, Gutman, Polirer, Lichtenstein, and Ketay acted together with FPA in bringing the prior actions against plaintiffs, the Court will deem these parties to have been in privity with FPA. *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320,

328 (S.D.N.Y. 2008) ("'The doctrine of privity . . . is to be applied with flexibility. . . . [T]here is no bright line rule' as to whether privity exists for res judicata purposes. 'Rather, a finding of privity . . . depends on whether, under the circumstances, the interests of the [defendant] were adequately represented [in the earlier action].'" (quoting *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987) (internal citations omitted) (alteration in original))); *see also Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970) (stating that privity includes, *inter alia*, "those who control an action although not formal parties to it [and] those whose interests are represented by a party to the action").

based on defendants' housing code violations (*see* Compl. ¶ 20), they raised this issue as a defense in the state court proceedings. (*See* Appellate Term Brief ¶ 18.) Fourth, to the extent plaintiffs allege that the civil court judge prevented them from proving that they were wrongfully evicted and, therefore, were entitled to an abatement, (*see* Compl. ¶ 18), they again raised those issues in their appeal. (*See* Appellate Term Brief ¶¶ 3, 4, 7.). Fifth, to the extent plaintiffs argue that defendants violated the FDCPA, 15 U.S.C. 1692g, plaintiffs raised that issue on appeal as well. (*See* Appellate Term Brief ¶ 2.) Finally, as noted above in the context of the collateral estoppel discussion, FPA's alleged failure to introduce certain documents, its failure to establish a prima facie case, and its status as the owner of the premises could obviously have been raised as defenses in the state court action. Therefore, *res judicata* bars plaintiffs' FDCPA, FCRA, New York General Business Law, malicious prosecution, abuse of process, wrongful use of a civil proceeding, and wrongful eviction claims, at least to the extent those claims relate to the civil court proceedings.

ii. Failure to State a Claim for Which Relief Can Be Granted

The complaint can be construed as asserting several claims that do not involve issues that were litigated or could have been litigated the civil court proceedings. First, plaintiffs appear to fault defendants based on defendants' actions in enforcing the civil court judgment. (*See* Compl. ¶¶ 11-13.) Second, the complaint refers to collection letters sent out by defendants in 2003 and 2006. (*See* Compl. ¶¶ 4-5.) Third, plaintiffs allege defendant Ketay reported them to credit bureaus in 2002 and also, in 2001 and 2002, took action that resulted in plaintiffs' being "blacklist[ed]" and thereby unable to rent an apartment in New York. (*See* Compl. ¶¶ 21-23.) Fourth, plaintiffs also allege that they were sued three times by defendant FPA in Virginia during the period between 2003 and 2005. (Compl. ¶ 25.) Finally, plaintiffs' appear to claim defendants Polirer and Gutman violated various housing and procedural statutes during an action plaintiff brought against FPA for abuse of process and wrongful use of a civil proceeding in state court during 2008. (*See* Compl. ¶ 31-32.) As set forth below, none of these allegations state a claim for which relief can be granted under any of the causes of action that plaintiffs assert.

a. FDCPA

The Court agrees with the R&R that plaintiffs have not set forth a viable FDCPA claim. Any FDCPA claim not barred by *Rooker-Feldman*, *res judicata*, or collateral estoppel is barred by the one-year FDCPA statute of limitations. Plaintiffs' objections to the R&R confirm that their FDCPA claim is based on actions that occurred in January 2006, more than one year before they filed this suit. (*See* Objections, at 7.)[6]

b. FCRA

The R&R recommends dismissal of plaintiffs' Fair Credit Reporting Act claim because no private right of action exists under the FCRA and, in any event, "the two year statute of limitations for FCRA claims has long run." (R&R, at 10.)

---

[6] The Court notes, however, that, contrary to the R&R's discussion of the FDCPA issue, plaintiffs filed this case in October 2008, not October 2007.

The Court respectfully disagrees with the R&R. First, a private right of action is available under 15 U.S.C. § 1681q, the provision plaintiffs rely on.[7] Specifically, the Second Circuit has held that a private plaintiff may bring a claim under § 1681q through § 1681n, the FCRA's enforcement provision for willful noncompliance with the statute. *See Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 47-48 (2d Cir. 1997); *see also Kennedy v. Border City Sav. & Loan Ass'n*, 747 F.2d 367, 369 (6th Cir. 1984) ("Thus, a civil cause of action under Section 1681n exists for violation of Section 1681q.").

Additionally, the FCRA includes both a two-year and a five-year statute of limitations. 15 U.S.C. § 1681p provides that:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of--
>
> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
>
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

"The shorter two-year statute runs from the date when [plaintiff] was on 'inquiry notice' regarding" defendant's FCRA violation. *See Willey v. J.P. Morgan Chase, N.A.*, No. 09 Civ. 1937, 2009 WL 1938987, at *5 (S.D.N.Y. July 7, 2009). Here, plaintiffs state that their FCRA claim relates to Gutman's use of "their illegal collection company . . . to obtain our address on Dec. 7, 2005 before sending us an indebtness [sic] letter on January 3, 2006." It is unclear, however, when plaintiffs received inquiry notice of Gutman's allegedly unlawful actions of December 7, 2005. In other words, there is insufficient basis in the Complaint to warrant beginning the two-year statute of limitations clock in 2005. It is possible that the two-year limitations clock did not begin to run until less than two years before plaintiffs filed the instant complaint. Thus, the Court declines to dismiss this claim on statute of limitations grounds.

However, the Complaint fails to adequately plead a violation of § 1681q. Plaintiffs do not allege that the address was obtained from a "consumer reporting agency" or that it was obtained by "false pretenses." *See* § 1681q As such, this claim must be dismissed. Because these pleading defects could potentially be cured in an amended complaint, however, the Court will allow plaintiffs leave to replead their FCRA claim.

c. Malicious Prosecution Claim

The Court agrees with the R&R that plaintiffs cannot succeed on the malicious prosecution claim to the extent that claim deals with the Kings County civil court action because plaintiffs lost that action. *Cf. Castro v. East End Plastic, Reconstructive and Hand Surgery, P.C.*, 850 N.Y.S.2d 483, 485 (App. Div. 2008) (stating that, to succeed on a claim of malicious prosecution of a civil action, a

---

[7] Section 1681q states "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than 2 years, or both."

11

plaintiff must show, among other things, that the underlying action terminated in plaintiff's favor).

However, the complaint (and the objections to the R&R) also refer to actions in Virginia that plaintiffs apparently prevailed in. (*See* Compl. ¶ 25.) In any event, even if plaintiffs assert a malicious prosecution claim based on the Virginia actions, the applicable statute of limitations bars that claim. In determining the applicable statute of limitations, this Court applies the choice of law rules of New York, the forum state. *See Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003) (stating that federal courts apply the choice of law rules of the forum state). Under New York's choice of law rules, malicious prosecution claims are governed by the law of the state where the underlying proceeding took place—here, the state of Virginia. *See Seghers v. Morgan Stanley DW, Inc.*, No. 06 Civ. 4639(GEL), 2007 WL 1404434, at *8 n.11 (S.D.N.Y. May 10, 2007) (applying Texas law to malicious prosecution claim); *see also* Restatement (Second) Conflicts of Laws § 155 (stating that malicious prosecution and abuse of process claims are generally determined "by the local law of the state where the proceeding complained of occurred"). Under Virginia law, a two-year limitations period applies to malicious prosecution claims. *See Smith v. Sparshott*, No. CL 2006-3261, 2006 WL 2578412, at *1 (Va. Cir. July 18, 2006) (citing Va. Code § 8.01-248). This time limit begins to run when the underlying action is terminated. *See* Va. Code § 8.01-249(3). Here, the final suit in Virginia was dismissed on June 6, 2005. (Compl. ¶ 25.) Plaintiffs, however, did not file this action until over three years later. Therefore, the malicious prosecution claim is barred by the two-year limitations period.

d. Abuse of Process

The Court accepts the R&R's recommendation that plaintiffs have failed to state a claim for abuse of process under New York law. To the extent plaintiffs allege abuse of process or wrongful use of a civil proceeding claim based on the Virginia actions, the applicable two-year limitations period bars that claim. *Asterbadi v. Leitess*, No. 1:04CV286 JCC, 2004 WL 5154924, at *3-4 (E.D. Va. July 20, 2004) (applying two-year statute of limitations to abuse of process claim).

e. New York General Business Law § 349 Claim

Based on the complaint and the objections to the R&R, plaintiffs allege that defendants violated this statute because FPA held itself out as owner of the building the plaintiffs were living in. The Court agrees with the R&R that, to the extent this claim is predicated on FPA's actions in the civil court litigation, that allegation is not the deceptive, consumer-oriented conduct that § 349 is intended to address. In any event, as noted above, the proper ownership of the building was an issue that was necessarily decided in the civil court litigation. Thus, res judicata and collateral estoppel preclude plaintiff from bringing this claim.

f. Remaining Claims

The Court accepts the R&R's recommendation that plaintiff cannot assert a cause of action under Federal Rule of Civil Procedure 11 or the various federal criminal statutes they cite. Additionally, the Court has reviewed plaintiffs' allegations relating to defendants' actions following the 2007 civil court judgment and in the later suit brought by

plaintiffs in state court and has found no theory under which plaintiffs could assert a viable claim related to those allegations.

B. Motion to Amend and Leave to Replead

The Court agrees with the R&R's recommendation that the motion to file an amended complaint on the grounds asserted by plaintiffs should be denied. Plaintiffs seek to add an FDCPA claim based on 15 U.S.C. § 1692k and a claim based on 28 U.S.C. § 1332. Any such amendment on these grounds would be futile. As explained above, any FDCPA claim not precluded on collateral estoppel or *res judicata* grounds is barred by the applicable statutes of limitation. Furthermore, § 1692k simply lays out the substantive and procedural requirements for civil actions brought under the FDCPA and does not provide an additional basis for relief. Similarly, § 1332 simply provides a basis for federal jurisdiction, not a substantive cause of action. Accordingly, the motion to amend on those grounds is denied because any such attempt would be futile in this case since it would not enable plaintiffs to overcome *Rooker-Feldman*, ordinary preclusion principles, the applicable statutes of limitation, and the other defects identified in the R&R and in this Memorandum and Order. *See Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied"); *Neal v. Martinez*, No. 01 Civ. 11587(VM), 2003 WL 260524, at *4 (S.D.N.Y. Feb. 5, 2003) ("In the instant case, the Court is not persuaded that Plaintiffs would be able to amend the Complaint in a manner which would survive dismissal, and consequently, any opportunity to replead is rightfully denied.").

However, as set forth above, the Court will allow plaintiffs' leave to replead their FCRA claim.[8] *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (holding that the Court should give a plaintiff an opportunity to amend if the Court cannot "rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim" (internal citations and quotations omitted)). In doing so, plaintiffs must address the pleading deficiencies identified above. *See supra*, at 10-11.

IV. CONCLUSION

The Court adopts the R&R, with the exception of the recommendations regarding plaintiffs' FCRA claim. Therefore, with the exception of the FCRA claims, plaintiffs' claims are dismissed with prejudice. However, plaintiffs are granted leave to replead their FCRA claim. Plaintiffs' motion to amend is otherwise denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 30, 2010
Central Islip, New York

\* \* \*

---

[8] Plaintiffs' filings also reference N.Y. City Consumer Protection Law § 5-77. It is unclear, however, if plaintiffs intend to assert a separate cause of action based on this statute, and the R&R did not address this claim as a separate cause of action. If plaintiffs intend to assert a claim under the N.Y. Consumer Protection Law, they may do so in the amended complaint.

13

Plaintiffs are proceeding *pro se*. Attorney for the defendants is Kenneth A. Novikoff, Rivkin Radler, LLP, EAB Plaza, Uniondale, NY 11556.